# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MAURICE MIZRAHI and ELAINE MIZRAHI, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A.; DOE Individuals I-X; and ROE Corporations I-X inclusive,<br><br>Defendants. | Case No.: 2:09-cv-01387-RLH-LRL<br><br>**O R D E R**<br><br>(Defendant's Motion to Dismiss First Amended Complaint–#18) |

Before the Court is Defendant Wells Fargo Home Mortgage's ("Wells Fargo") **Motion to Dismiss First Amended Complaint** (#18), filed March 1, 2010. The Court has also considered Plaintiffs Maurice and Elaine Mizrahis' Opposition (#21), filed March 18, 2010, and Wells Fargo's Reply (#22), filed March 29, 2010.

**BACKGROUND**

In October 2005, the Mizrahis purchased the real property located at 3339 Zuni Circle Las Vegas, Nevada. (Dkt. #15, Am. Compl. ¶¶ 1, 9.) According to the Mizrahis, they initially financed the property with MortgageIt and the loan was subsequently transferred to Wells

1

AO 72
(Rev. 8/82)

1  Fargo in November 2005.  In 2008, the Mizrahis defaulted on their mortgage loan causing a Notice
2  of Default to be recorded on February 24, 2009.  On June 15, a Notice of Trustee Sale was
3  recorded.
4          On June 29, 2009, the Mizrahis commenced this action in the Eighth Judicial
5  District Court of the State of Nevada.  (Dkt. #1, Pet. for Removal Ex. A, Pls' Compl.)  On July 30,
6  Wells Fargo removed the case to this Court based on both diversity and federal question
7  jurisdiction.  In their original complaint, Mizrahis alleged claims including violations of the Truth
8  in Lending Act, breach of duty of good faith and fair dealing, quiet title, breach of fiduciary duty,
9  wrongful foreclosure, negligent/intentional misrepresentation, negligence, and unfair lending
10  practices.  On August 6, Wells Fargo filed a Motion to Dismiss (#4) the Mizrahis' complaint.  The
11  Court held a hearing November 30, during which the parties agreed to dismiss the original
12  complaint and allow the Mizrahis to file an amended complaint.  (Dkt. #14, Hr'g Mins.)
13          On December 10, the Mizrahis filed an Amended Complaint (#15) alleging new
14  facts that implicate Wells Fargo's actions during the modification process, and alleging two new
15  claims: (1) Breach of Contract and Failure to Act in Good Faith, Implied Contract; and (2)
16  Declaratory Relief.  According to the Mizrahis, in late February 2009, Wells Fargo informed them
17  they "may be eligible for payment relief" on their mortgage through a "Borrower Counseling
18  Program."  (Dkt. #21, Pls.' Opp'n Ex. A, Feb. 24, 2009 Letter .)  If the Mizrahis qualified for the
19  program, Wells Fargo would approve a loan modification or other appropriate relief.  The
20  Mizrahis expressed interest in the program.  However, Wells Fargo informed the Mizrahis it could
21  not "delay potential legal action to collect the balance of [their] loan which may include
22  foreclosure" (*Id.*, Apr. 10, 2009 Letter) and scheduled a trustee's sale for July 6.  As a result, the
23  Mizrahis retained U.S. Home Bailout ("USHB"), a loan modification company, to assist them with
24  negotiations.  USHB submitted a loan modification application for the Mizrahis.  Wells Fargo
25  acknowledged it had received the Mizrahis' Application (*Id.*, Jul. 8, 2009 Letter), and agreed to
26  postpone the trustee's sale.

AO 72
(Rev. 8/82)

From July to September, the Mizrahis claim Wells Fargo consistently responded to status inquiries by saying their potential loan modification was under review. However, on September 10, Wells Fargo held the trustee's sale. The Mizrahis claim they never received notice of the rescheduled trustee's sale or Wells Fargo's denial of their loan modification request. After the sale, USHB contacted Wells Fargo to find out why the property was sold and what happened to the loan modification application. Wells Fargo allegedly informed USHB that a letter was mailed to the Mizrahis informing them it had denied their application. The Mizrahis claim they never received this letter, however, they later submitted it as a supplement to their opposition.

On March 1, 2010, Wells Fargo filed a Motion to Dismiss (#18), which the Mizrahis opposed and Wells Fargo replied. On April 30, the Mizrahis filed a Supplement (#23) to their opposition containing a letter dated September 3, 2009, in which Wells Fargo informed the Mizrahis it denied their application and recommended options including short sale and deed in lieu of foreclosure. (Dkt. #23, Ex. A.) On May 20, Wells Fargo filed a Motion to Strike (#25) the Supplement. The Court held a hearing on Wells Fargo's Motion to Dismiss and Motion to Strike on May 27. The Court took the Motion to Dismiss under consideration and denied the Motion to Strike. (Dkt. #28, Hr'g Mins.) After considering the moving papers and the parties' oral arguments, the Court now grants Wells Fargo's Motion to Dismiss for the following reasons.

**DISCUSSION**

**I.      Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." While a pleading generally need not contain detailed allegations, it must allege sufficient facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not allege sufficient facts to raise a right to relief above the speculative level if it contains nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a

AO 72
(Rev. 8/82)

cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Ashcroft v. Iqbal*, the Supreme Court provided a two-step approach for district courts to apply when considering motions to dismiss. First, the court must accept as true all factual allegations in the complaint. *Id.* at 1950. A court does not, however, assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Id.* at 1950; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Mere recitals of the elements of a cause of action, supported only by conclusory statements, also do not suffice. *Iqbal*, 129 S. Ct. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* at 1949. Thus, where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

**II.    Wells Fargo's Motion to Dismiss**

    **A.    Breach of Implied Contract**

Nevada law requires the plaintiff in a breach of contract action to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F. Supp 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865). To create an enforceable contract there must be an "offer, acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Express and implied contracts differ in the manner that sets forth the terms of the

4

agreement—the terms of an express contract are stated in words while those of an implied contract are manifested by conduct. *Smith v. Recrion Corp.*, 541 P.2d 663, 665 (Nev. 1975). However, both types of contracts are founded upon an ascertainable agreement. *Back Streets, Inc. v. Campbell*, 601 P.2d 54, 55 (Nev. 1979). Thus, to prevail on the breach of implied contract theory, a court would necessarily have to determine that both parties intended to contract and that promises were exchanged. *Smith*, 541 P.2d at 665.

The Court finds that the Mizrahis' factual allegations do not state a plausible claim for breach of implied contract. The Mizrahis allege that the parties entered into an enforceable implied contract when Wells Fargo offered to consider a loan modification or another alternative to foreclosure if the Mizrahis provided certain financial documents and other information. They allegedly accepted Wells Fargo's offer by completing and submitting the loan modification application, and provided consideration by submitting all the financial information requested. Accepting all factual allegations as true, the Mizrahis have failed to show a valid offer and acceptance. The numerous letters explaining the Borrower Counseling Program asked the Mizrahis to promptly express their interest, but did not amount to an offer. Rather the letters invited the Mizrahis to offer by submitting the modification application and financial information. (*See* Dkt. #21, Opp'n Ex. A.) The letters do not show that the parties intended to contract. Thus, the Court finds that the parties did not come to a "meeting of the minds" with a valid offer and acceptance.

Furthermore, the Mizrahis have failed to show the existence of consideration. Nevada adopted the Restatement of Contracts' view of consideration that "[t]o constitute consideration, a performance or return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984) (quoting Restatement (Second) of Contracts § 71(1), (2) (1981)). This bargained-for-exchange requires a mutuality of obligation—"unless both parties to a contract are bound, neither is bound."

5

1  *Serpa v. Darling*, 810 P.2d 778, 781 (Nev. 1991). The Mizrahis assert they supplied valid
2  consideration by sending Wells Fargo all requested financial information. However, providing the
3  requested documents was simply a part of the application process, which the Mizrahis were willing
4  to complete in the hope that Wells Fargo would modify their loan. Wells Fargo did not promise to
5  do anything in exchange for the requested information because its letters merely informed the
6  Mizrahis of the Borrower Counseling Program and invited them to apply. Although the Mizrahis
7  submitted their financial information as requested, these actions were not sufficient to bind either
8  party. Thus, the parties did not have sufficient consideration or mutuality of obligation to form an
9  implied contract. Because the Mizrahis' allegations fail to show the existence of a valid contract,
10 their claim for breach fails. Accordingly, the Court dismisses this claim.

11 **B.    Failure to Act in Good Faith**

12 A claim for breach of the covenant of good faith and fair dealing arises when a
13 "party to the contract deliberately contravenes the intention and spirit of the contract." *Hilton*
14 *Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). A party cannot
15 breach the covenant before a contract is formed. *See Indep. Order of Foresters v. Donald, Lufkin*
16 *& Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("an implied covenant relates only to the
17 performance of obligations under an extant contract, and not to any pre-contract conduct"). A
18 claim for breach of the covenant of good faith and fair dealing is dependent upon whether the
19 parties have formed a valid contract. The Mizrahis allege Wells Fargo breached the contract by
20 denying their loan modification application. As the Court previously stated, the parties did not
21 form a valid contract. Thus, Wells Fargo could not have breached the covenant.
22 Even if the Court had found a valid implied contract, this claim would still fail.
23 The Mizrahis allege the parties' implied contract required Wells Fargo to *consider* their loan
24 modification application, not *approve* it. Thus, Wells Fargo could not have breached the covenant
25 of good faith and fair dealing by denying the Mizrahis' application. Furthermore, during the
26 hearing on this Motion and in their Supplement, the Mizrahis acknowledged that Wells Fargo did

1  in fact consider and subsequently deny their application.  Ultimately, the Mizrahis' claim for
2  failure to act in good faith fails because there was no valid and enforceable contract between the
3  parties.  Therefore, the Court dismisses this claim.

   **C.** **Declaratory Relief**

   In their Amended Complaint, the Mizrahis ask the Court to declare that they acted in good faith under the implied contract while Wells Fargo did not.  Because the Court dismisses the Mizrahis' claims for breach of implied contract and failure to act in good faith, the Mizrahis' claim for declaratory relief now fails.  The Court therefore dismisses this claim.

   **D.** **Lis Pendens**

   Because the Court grants Wells Fargo's Motion, Wells Fargo is entitled to receive a court order expunging the lis pendens on the property.  Accordingly, the Court orders that any lis pendens or notice of pendency recorded by the Mizrahis in connection with this lawsuit be expunged, extinguished, and/or released.

### CONCLUSION

   Accordingly, and for good cause appearing,

   IT IS HEREBY ORDERED that Wells Fargo's Motion to Dismiss First Amended Complaint (#8) is GRANTED.  The Clerk of the Court is instructed to close this case.

   Dated: June 11, 2010.

                   _____
                   **ROGER L. HUNT**
                   **Chief United States District Judge**